BOULDIN, J.
delivered the opinion of the Court.
After stating the case, he proceeded:
Every error assigned has been carefully examined by the Court, as also the point which arose on the prisoner’s motion to quash the Indictment. But except the first and seventh of the errors assigned the Court see nothing whereon to raise a doubt.
Whether the Superior Court of Chesterfield ought to have continued the cause, will now be considered. On examining the Record, we find that the Record of the ^Examining Court is made a part of it. On inspection, it appears at once that the prisoner meant not to be tried as long as he could get continuances. The list of witnesses to whose materiality he swears on several occasions, is numerous, and yet on the final examination, when those to whose materiality he had sworn at the former Courts, do not appear to have Deen absent, notone of them was called on by _ him to give evidence in his behalf. This shows distinctly that the continuances moved for in that Court were not that he might have the benefit of the evidence of witnesses on his examination. At the first Term of the Superior Court of Chesterfield, he moved for a continuance, and it was granted to him, but he was informed by the Court, that on repeating that motion at a subsequent Term, he must prove the materiality of the absent witness, by producing the affidavit of the witness, if it could be procured. The circumstances of the case called for this caution. The evidence expected from the witness was short and simple; her affidavit might easily have been taken. If it had been taken, the prosecutor might have admitted it to go to the Jury. If the circumstances in any case can warrant such a conclusion, they will in this, that the affidavit was kept back either because the witness would not swear to what was expected, or that the prisoner preferred the chance for a continuance to the use of the evidence.
A reason which appears to have had influence with the Judge below is not without weight. There were more than thirty witnesses present on the part of the prisoner. For aught that appears, eacn of them might be able to give evidence having some remote bearing on the evidence given against him. No precise rule can be laid down as to the influence this circumstance ought to have in any case upon a motion for a continuance, but it is easy to see that such a number of witnesses lays the ground work for motions of this sort to be endless, and calls on the Court for circumspection in granting them. Upon all the circumstances here developed, the Court is unanimously of opinion, *lhat the prisoner’s motion for a continuance was properly over-ruled.
The question arising from the seventh error assigned, is whether the November Term of the Superior Court of Chesterfield was at an end when the verdict was rendered, and the Judgment given in the case. This depends on the true construction of the third section of the Circuit Court Law, 1 Rev. Co. p. 229, taken in connection with other sections of the same Act, and the General Court Law. The first section, p. 226, enacts, “that one Judge of the General Court shall hold a Court in each year at the Court-house, &c., at the times, and in the manner hereinafter directed.” The second section arranges all the Counties into Circuits, and appoints the day of holding the Courts for each; thus, “a Court shall be holden in — Chesterfield on the second day of June, and the second day of November. ” Then comes the third section. “Each of the aforesaid Courts shall sit until the business thereof shall be dispatched, unless the Judge holding the same be compelled to leave the Court, in order to arrive in time at the next succeeding Court of his Circuit, or at the General *879 Court.” .'The eighth section of the same Law, p. 230, declares that, “if the Judge shall not”; attend on the first day of any Circuit Court, such Court shall stand adjourned from day to day, until a Court shail be made, if that shall happen before four of the clock in the afternoon of the third day.” The General Court halt, p. 219, sect. 1, enacts, that “the General Court shall consist of (fifteen) Judges, &c. a majority of the whole number of the said Judges shall be necessary to constitute a General Court for the transaction of business in Term time, except as herein is excepted. The said Court shall be holden at the Capitol in the City of Richmond. The said Court shall be holden twice in every year, namely, on the fifteenth day of June, and fifteenth day of November. If a ■sufficient number of Judges should not attend on the first day of any Term, any one of the said Judges may adjourn the Court from day to day, for six days successively.”
Hn the language of the third section, there is certainly no express limitation of the Term: each Court is to sit until the business is dispatched, and two of the Judges (Brockenbrough and Summers,) are strongly inclined to think that the qualifying words, “unless the Judge be compelled, &c.,” are tobe considered as directory, or permissive only, and that of the necessity to go to the next Court, or to finish what is before him, and what has been already begun, he is to judge, and on his own responsibility to decide whether a compliance with the express order of the Legislature, to dispatch the business before him, or to go to the next Court as the Law permits, will best subserve the public interest. And they argue that it is right it should be so, or else there would often be a failure of justice. In some of our Courts, it sometimes happens that cases of the most important character could not be finished, and consequently would never be tried, unless the Judge have the power to run imo the Terms of the next Court to which his duty calls him, and as the Legislature fixed no precise limit, the construction which best fulfils their general purpose is the right one. They argue that the state of things at the first organization of the Circuit Court System, shows that theirs is the true rule. At that time the General Court was held on the 9th of June, and November. Many of the Superior Courts were held late in May, and October. In the distant Courts, situated more than three hundred miles from Richmond, the Judge must close his last Superior Court at least as early as the last day of the preceding month, to arrive here on the first day of the session of this Court. But that day finds him closely engaged in a difficult and important cause, which cannot yet be finished for a week. Had he no discretion to finish that cause because the Law required him to attend at Richmond on the 9th? Was every thing that he did there void, and coram non judice, because of that injunction of the Law? They cannot think so.
But, whether that opinion be right or not, (and they do not deem it necessary to press it) those Judges concur with “five other Judges now present, in the opinion, that no limitation of the Term of the Court, which can be implied from the words of the third section, makes the Judgment now under consideration, void or erroneous.
If the Judge of the Superior Court of Chesterfield, after closing that Court on the ISth instant, did arrive, or could arrive at this Capitol at any time on rhe same day, he would have been “in time” to hold, in concurrence with seven others, if so many attended, a General Court on that day, or to adjourn the General Court to the next day, if he only attended: the verdict in this case was rendered in the night of the 14th, although after midnight, and for aught that appears, the Judgment was rendered early the next morning. It is judicially known of this Court that Chesterfield Court-house is not very remote from this Capitol, and that three hours moderate riding would bring the Judge here. If, when that Judgment was rendered, there was not time for the Judge to arrive at the General Court on the 15th, that matter ought to have been shown by exception. Some of the Judges of this Court are in the habit of finishing the business of one Superior Court, in the morning of the first day of the next succeeding Superior Court, and sometimes of doing a good day’s business in the latter Court on the same day.
Suppose the Act of Assembly to be construed as if in place of the words “unless,” &c. it had been thus written: “but so soon as it becomes necessary for the Judge to leave the Court, in order to arrive in time at his next Court, his power to hold the former Court shall cease.” If such had been the language, the Judgment under consideration would still have been good. It appears from this Record, that the Judge rendered the Judgment on the 15th, and it cannot be intended, as it does not so appear, that he did not leave himself time to arrive here on the same day.
It has been argued, that the Act appointing particular and several days whereon the same Judge shall hold several ^Courts, excludes the idea that he may on the day he is directed to hold a Court in one County, be holding it in another. It is true that the first and second sections do declare that Courts shall be held in one County on a particular day, and in another county on another day, and those sections say nothing about the duration of the Term. If the Act had stopped there, it may be doubted whether in strictness the Courts could be held for a longer period than the day so appointed, or whether any adjournment could take place, even to the next day; but then the third section comes in, and does not leave this matter to conjecture, or construction. It in effect, directs that adjournments shall take place, from day to day, until the business is done, “unless the Judge holding the same be compelled to leave the Court in order to arrive in time at the next succeeding Court, or at the General Court.” To construe this permissive language as if it had been, “provided the business can be *880 dispatched before the day on which the next Court is to be holden,” would be to depart from the ietter, not to further, but to defeat, the general objects of the Legislature. That general object is, that the business of both Courts may be done. The natural sense of the language used, does not allow the Judge to leave the business of the Court be is holding unfinished, so long as he can transact the same, and have time to open the next Court on the day appointed by haw.
A majority of the Court do not see any valid objection to taking the time the Law allows the next Circuit Court to stand adjourned to, without the attendance of the Judge, into the account. Thus, according to the eighth section, if the Judge does not attend, the Court stands adjourned from day to day, till four o’clock of the third day. If a trial 'of a cause in the preceding Superior Court, is greatly protracted, the necessity of the case would justify the Judge, in our opinion, in not closing that Court till the period.arrives when he might be compelled to leave the Court in order to arrive at the next Superior Court by four ^'o’clock of the third day. But it is not necessary to decide that question now, particularly' as one of the majority (Saunders, J.) is not entirely satisfied on that point. The Record before us does not show but that the Judge might' have so closed his business in Chesterfield, as to have literally complied with his duty to be here in time, on the first day of this Court. The course taken is a literal adhérence to the Legislative direction to dispatch the business of the Superior Court of Chesterfield, so long as he could do so, and arrive in time at the General Court.
On this seventh error assigned by the prisoner’s Counsel, three of the Court, (Parker, Upshur, and Field. J.) are of opinion, that a Writ of Error should be awarded, but all the other Judges present, being seven in number, are against it.
On all the other points exhibited by the Record, all the Judges are of opinion that there is no error, and the Writ of Error is therefore refused.